### ROBB et al. v. ROELKER et al.

(Circuit Court, S. D. Ohio, W. D. February 28, 1895.)

#### No. 4,303.

1. ATTORNEY AND CLIENT—UNAUTHORIZED APPEARANCE—ELECTION OF REME-
DIES.

R. and S. were seised, as trustees, of certain land which was leased to
L., with privilege of purchase for $10,000. One G. brought a suit against
R. and S., asking that they might be declared to hold the land by way
of mortgage for $10,000, and that it might be sold, and the proceeds ap-
plied to the payment of their mortgage, and to other debts of L., including
a judgment in G's favor. R. and S. were not served with process, and
K. & R., without authority, appeared as attorneys for them, and con-
sented to a decree for sale of the land. The land was sold, and the $10,000
and interest paid to K. & R., who, however, never paid it over to R. and
S. Upon discovering these facts, R. and S. brought suit against the pur-
chasers of the land, repudiating the acts of K. & R., and praying that the
sale might be set aside, and their rights in the land restored. Subse-
quently, they brought suit against the surviving members of the firm of
K. & R. to recover the $10,000 and interest. It seems that the two pro-
ceedings were not inconsistent, and that the bringing of the first suit was
not such an election to repudiate the acts of K. & R. as to estop the
plaintiffs to claim the money paid to them.

2. SAME—RATIFICATION OF UNAUTHORIZED ACTS OF ATTORNEY.

It appeared that certain proceedings taken by R. and S. against the es-
tate of a deceased partner of the firm of K. & R. had been held, in the
suit against the purchaser of the land, to be a ratification of K. & R.'s acts,
although R. and S. had withdrawn such proceedings, and attempted to re-
pudiate such ratification. *Held*, that this unsuccessful attempt could not
now avail defendants, and they could not insist that R. and S. had elected
not to ratify their acts.

This is an action by J. Hampden Robb and Charles E. Strong,
as trustees, against Frederick G. Roelker and Ferdinand Jelke, Jr.,
surviving partners of the firm of Kebler, Roelker & Jelke, to re-
cover moneys paid to the firm as attorneys for plaintiffs. The de-
fendants have answered, and plaintiffs demur to the answers.

Harmon, Colston, Goldsmith & Hoadly, for plaintiffs.
Kittredge & Wilby, for defendants.

SAGE, District Judge. The plaintiffs were on the 13th of November, 1885, seised in fee of premises described in the petition, situate in the city of Cincinnati, and leased by them to Moritz Loth, with privilege of purchase for the sum of $10,000. On the date above named, one Meyer Guggenheim, a judgment creditor of Loth, filed a creditor's bill in the state court; praying, among other things, that these plaintiffs might be declared to hold said lands by way of mortgage as security for the payment of the sum named as the purchase price, but which, it was averred in the bill, was in reality a loan, and that the lands might be sold, and the proceeds applied first to the payment of said $10,000, and then to the satisfaction of said Guggenheim's judgment and other claims set up as lien claims. The plaintiffs were not served with summons in said action, personally or by publication; but on the 18th of December, 1885, Charles A. Kebler, then a partner with the defendant Frederick G. Roelker, under the firm name of Kebler & Roelker, in the practice of law at Cincinnati, without authority from or the knowledge of the plaintiffs, entered, in the name of his firm, their appearance in said action, and caused an answer, purporting to be the answer of these plaintiffs, to be filed therein. Thereafter, and prior to the 18th of May, 1887, the firm of Kebler & Roelker was dissolved, and Kebler, with the defendants herein, engaged in the practice of the law at Cincinnati under the firm name and style of Kebler, Roelker & Jelke, as successors of Kebler & Roelker. Thereafter, said firm of Kebler, Roelker & Jelke, without authority, but falsely pretending to act on behalf of these plaintiffs and in their name, took all steps in said action which were taken in their name; and a decree purporting to be made by the consent of these plaintiffs, but without their knowledge, authority, or consent, was entered in the case, whereby it was directed that said premises should be sold for the purpose of said action, and free of all claims of these plaintiffs. A sale was made accordingly, and confirmed, and there was then paid to Kebler, Roelker & Jelke, out of the proceeds, the sum of $11,361.66; said firm, through Charles Kebler, pretending to be authorized to receive the same for and on behalf of the plaintiffs. No portion thereof has been paid to these plaintiffs, or accounted for to them. All these facts are alleged in the petition.

It is further alleged that said proceedings had by said firm were solely without authority from the plaintiffs; that they had no knowledge of the pendency of said action, nor of the proceedings therein, until after the 23d of November, 1887, on which date Kebler departed this life, leaving the defendants sole survivors of the firm. The plaintiffs pray for judgment for $11,361.66, with interest from the 16th of June, 1887. The petition was filed on the 30th of January, 1890.

The defendants filed separate answers, presenting, however, the same defense. The first defense is that the complainants filed their bill in equity in this court against August Voss and William Stix, the purchasers of the lands sold by order of the state court, as hereinbefore set forth, and that in said bill they repudiated, as

unauthorized and fraudulent, the acts of said Kebler, professedly on their behalf, in the case wherein said sale was ordered, and claiming that the state court had no jurisdiction over them in said proceedings, and that the sales to Voss and Stix and the deeds thereunder were null and void, prayed that it should be so decreed, and these plaintiffs, as trustees as aforesaid, be declared to be the sole owners, in fee simple, of said premises, that their rights under their lease to Loth be restored, and that said lease be held and declared to be in full force and effect, and the rents accruing thereunder be ascertained, and adjudged to be a lien upon said leasehold. They allege that said suit is still pending in this court, and is now, by said plaintiffs, being prosecuted and maintained.

The plaintiffs demur to this defense, for insufficiency. The defendants' contention is that, by instituting the suit against Voss and Stix, plaintiffs elected to disavow any relations to or claim upon the law firm of which Kebler was a member, or upon the defendants as the survivors of the succeeding firm. That a party cannot occupy inconsistent positions, and that, where he has an election between two or more courses of proceeding, he will be confined to that which he first adopts, as stated in Bigelow on Estoppel, at page 578, is an established rule of the law of estoppel. It is subject, however, to certain qualifications. In Coleman v. Oil Co., 51 Pa. St. 74, a company, having bought in shares of its own capital stock, afterwards divided them among the then stockholders pro rata. A stockholder who had, between the time of the purchase and the time of the distribution, assigned a part of his stock, sued the company for a pro rata of the shares, on the basis of the number held by him at the time of the purchase. The court held that his action was an affirmance of the purchase, and that he could not thereafter allege that the company's funds were misapplied; as to him, the distribution was an equitable one. The court said, "Whatever we might think of it in a different action, we can, in this action, regard it in no other light than a valid corporate act."

The case of Vulcanite. Co. v. Caduc, 144 Mass. 85, 10 N. E. 483, is in point. There was an action by a corporation against its treasurer, who had misappropriated its funds, and, without authority, lent them to the National Color-Printing Company, of which he was also treasurer. The plaintiff brought an action of contract against the last-named company, and afterwards sued the treasurer for the misappropriation of its funds. The treasurer claimed that this suit was a ratification of his acts, and discharged him from liability to the plaintiff for the alleged misappropriation. The supreme court said that it might be that the National Color-Printing Company would have the right to insist that bringing the suit was, as to itself, a ratification of the loan, and an election between two remedies, but held that the principle did not apply where there is a right to resort to two parties by remedies which are not inconsistent. We quote from the decision:

"Take the case before us. The plaintiff discovers that its treasurer has misused its money, and wrongfully lent it. Why may it not properly say

to him: 'We hold you responsible for this misuse. We will reduce our damage by recovering what we can from the borrower, but shall look to you for indemnity for such damage as we finally sustain from your misconduct'? This is all that bringing a suit against the borrower, in whatever form, necessarily says or implies. There is nothing inconsistent in the two positions. There is nothing in the nature or the justice of the case which should preclude the principal from pursuing this course, which is for the interest of the agent. To hold that bringing a suit under such circumstances not only ratifies the loan, so far as the borrower is concerned, but condones the offense of the agent, and relieves him from all liability, would be carrying the doctrine of implied ratification to an unreasonable and unjust extent."

Applying that decision to this case, the plaintiffs are not estopped from prosecuting their action against the defendants. But this question is really nothing more than a moot question. On the 26th of November, 1889, before the answers to which the demurrers are interposed were filed, the case, which is made the basis of the answer to which the demurrer is filed, was dismissed by this court for the reason that prior to the commencement of that case the plaintiffs had affirmed the agency of Kebler & Roelker, by causing themselves to be made parties defendant to a petition filed in the court of common pleas of Hamilton county by the administrator of Charles A. Kebler, then deceased; setting forth, among other things, that Kebler died intestate and insolvent, and that it was necessary to sell the realty belonging to his estate, described in the petition, in order to provide means to pay debts. The plaintiffs herein, as defendants and cross petitioners in that case, set up the sale of their property under the supervision of Kebler & Roelker, as their attorneys, and alleging that the proceeds of said sale were paid to said firm of Kebler, Roelker & Jelke, and that no portion thereof had been paid or accounted for to them, prayed that it might be decreed to them out of the proceeds of the sale of the land belonging to the estate of Charles A. Kebler. Subsequently, that is to say, on May 17, 1888, the plaintiffs withdrew, by leave, their answer and cross petition, and filed a demurrer, on the ground that they were not proper parties to the case, which demurrer was sustained by the court; and they were on May 26, 1888, dismissed, with their costs. This court, however, held that by their action in that case they had recognized Kebler & Roelker and Kebler, Roelker & Jelke as their attorneys, and that they were bound by that recognition, and therefore dismissed the bill. The case was taken by appeal to the supreme court of the United States, where on the 15th of October, 1894 (155 U. S. 13, 15 Sup. Ct. 4), the dismissal was affirmed. It appears, therefore, that the first and decisive election by the plaintiffs was to recognize the sale made without their knowledge and authority, and to hold the defendants in this case responsible. That election was also an affirmance or ratification of their assumed agency. The subsequent attempt to repudiate their authority failed, and cannot avail the defendants in this action.

The demurrer will be sustained, with leave to the defendants to present an amended answer within 20 days, and apply for leave to file the same.