MATT G. REYNOLDS, Receiver of the CONTINENTAL ASSURANCE COMPANY OF AMERICA, a Corporation, Appellant, v. UNION STATION BANK OF ST. LOUIS, a Corporation, Respondent.

St. Louis Court of Appeals. Opinion Filed February 5, 1918.

1. **ELECTION OF REMEDIES: Application of Doctrine: Inconsistent Remedies.** The doctrine of election of remedies under which the pursuit of one remedy precludes the pursuit of another, applies only to those cases in which a party has two remedies which are inconsistent with each other, and has no application to a state of facts where a party has a right to bring more than one suit.

2. ———: ———: ———: **Actions.** Defendant loaned money to persons who·advanced it to the promoter of an insurance company for preliminary expenses. After the incorporation of the company, but before it received its license to do business, and while it was still in process of organization, the promoter, then secretary of the corporation, drew the check of the corporation, and delivered it to defendant in payment of its loan. *Held,* .that the corporation had two causes of action, one against the secretary for conversion, and the other against defendant for money had and received, and these remedies were not inconsistent, and by suing the secretary for his failure to account for all moneys belonging to it received by him, it was not precluded from suing defendant.

Reynolds v. Union Station Bank of St. Louis.

3. **CORPORATIONS: Insurance: Insurance Companies: Powers While Organizing: Promoters.** An insurance company which, though incorporated, was still in process of organization, and had not obtained a license to do an insurance business, had no power to assume an indebtedness contracted by its promoters, and persons advancing money to the promoter for preliminary expenses had no claim against the corporation, though the money was used for its preliminary expenses.

4. ——: **Misappropriation of Funds by Officer: Duty to Restore.** One accepting a check from a corporation drawn by an officer thereof in payment of his private obligation takes the risk of being required to restore the proceeds in an action for money had and received in the event that the corporate funds are thereby misapplied.

5. ——: ——: **Actions: Instructions.** In an action by the receiver of an insurance company whose secretary and promoter, while it was a process of organization, delivered its check in repayment of money advanced to him for preliminary expenses, an instruction to the effect that if the jury found that he acted with the consent and authority of the board of directors they should find for defendant was prejudicial error, where the only reference in the testimony to the board of directors was testimony that the board authorized the secretary to act as fiscal agent to sell the stock.

6. ——: ——: **Instructions: Burden of Proof.** An instruction that the burden of proof was on plaintiff to show that the corporation check drawn by an officer thereof in payment of his private obligation was erroneous in that it is the established rule that such a check carries on its face notice of its irregular and illegal character, and the burden was on the defendant to show by evidence that the secretary who thus issued the check of the corporation in payment of his private obligation was either the beneficial owner of the fund or duly authorized to make such payment by those having authority to authorize it.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED.

*John S. Leahy* and *Chase Morsey* for appellant.

(1) The Union Station Bank having accepted the check of the Continental Assurance Company in payment of a note which it sold and endorsed to Harry B. Gardner, the officer drawing the check, took the money of the Assurance Company with knowledge of the fact that it was not Harry B. Gardner's and in this action for money had and received must account for its pro-

ceeds. St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548; Coleman v. Stocke, 159 Mo. App. 43; Bank v. Edwards, 243 Mo. 569; Bank v. Orthwein, 160 Mo. App. 369.   (2)   At the time the Bank accepted the check of the Assurance Company in payment of the note which it sold to Mr. Gardner the Assurance Company was in the process of organization. It had not sold all of its stock and it had not obtained a license to do an insurance business. It therefore had no authority to do or transact any business of any kind or character whatsoever and all persons dealing with it were bound to take notice of this fact. Ellerby v. Bank, 109 Mo. 445; Taylor v. Louis National L. Ins. Co., 266 Mo 283; Reynolds, Receiver v. Whittemore, 190 S. W. 594.   (3) The Bank having accepted the check of the Assurance Company in payment of a note sold to the officer drawing the check the burden of proof was shifted to the defendant. The court erroneously instructed the jury that the burden of proof rested upon plaintiff. Bank v. Edwards, 243 Mo. App. 553; Reynolds, Receiver, v. Whittemore, 190 S. W. 594.   (4)   The court instructed the jury that the plaintiff was entitled to recover unless Mr. Gardner in drawing the check acted with the consent and authority of the board of directors. There is not a line of testimony in the record showing that Mr. Gardner had this authority. The verdict of the jury is therefore against the evidence. (5)   The fifteen hundred dollars furnished by Douglas, Gillespie, Biggs and Caneer and turned over to Gardner on February 24, 1909, did not become an indebtedness of the Assurance Company after it received its charter on April 24, 1909. Reynolds, Receiver, v. Whittemore, 190 S. W. 594.

*John H. Boogher* for respondent.

(1)   The respondent did not receive the check in pyment for a note sold to Gardner nor in payment by Gardner of any of his private debts, and the rule in St. Louis Charcoal Co. v. Lewis, and cases following

it, is not applicable. (2) It was lawful to restore to
Caneer and Gillespie the $1,000 advanced for a stock
subscription after the plan was changed under which
the subscription had been made, and they could have
maintained an action for money had and received for
the amount. Stout v. Hardware Co., 131 Mo. App. 520;
Montgomery v. Wise, 138 Mo. App. 176; Jenkins v.
Clopton, 141 Mo. App. 74; Central Mfg. Co. v. Mont-
gomery, 144 Mo. App. 494; Gaines v. Miller, 111 U. S.
395; Moffitt-West Drug Co. v. Richardson, 92 Mo. App.
515. (3) In view of threatened legal proceedings and
for the avoidance of litigation, the act of restoration
to Caneer was not only legal but an act of simple justice.
Such compromises are conclusive and will be sustained
by the courts regardless of the validity of the claims.
Mehrun v. Kuhn, 61 N. Y. 623; Kidder v. Horrobin,
73. N. Y. 159; 13 L. R. A. note p. 601; 15 L. R. A. note p.
439 and cases cited; Wood v. K. C. Howe Tel. Co., 223
Mo. 537. (4) The test in action for money had and
received is, would the retention of the money by de-
fendant be unconscionable. It is apparent that the
refusal to have returned it to Caneer would have been
unconscionable. Winningham v. Fancher, 52 Mo. App.
458; Montgomery v. Wise, 138 Mo. App. 176; Central
Mfg. Co. v. Montgomery, 144 Mo. App. 494; Gwin v.
Smurr, 101 Mo. 553. (5) Under the circumstances
this $1,000 was impressed with a trust in Gardner's
hands which the court would impose upon the receiver
had they not been restored, and it would be a futile
thing to make respondent undergo further litigation
when the present judgment is for the right party and
does full equity and justice. Taylor v. Benham, 46
U. S. (5 How. 233) 12 L. Ed. 130; Hodge v. Bullock,
15 R. I. 562; In re Linforth, 87 Fed. 390. (6) Ap-
pellant is in error in his point 2 in considering the trans-
action in the light of a sale of the note to Gardner, and
there is no rule of law requiring of respondent that
he inquire into the consideration if any given by Caneer
when he obtained the check in question. The dealing

and business of the bank was not with the Insurance Company. (7) Likewise, appellant is in error with respect to the burden of proof. This burden was fixed upon respondent at the outset. Thereafter it does not change. However the order of proof may shift during the trial, the burden of proof remains where first cast. Dorrell v. Sparks, 142 Mo. App. 460; McCartney v. Ins. Co., 45 Mo. App. 373; Feurt v. Ambrose, 34 Mo. App. 360. (8) With knowledge of all the facts, the prior suit and judgment in debt against Gardner, with part collected, bars this suit. Johnson-Brinkman Com. Co. v. Mo. Pac. Ry. Co., 126 Mo. 349; Nanson v. Jacob, 93 Mo. 331; Estes v. Reynolds, 75 Mo. 563; Stoller v. Coates, 88 Mo. 514; Bradley v. Brigham, 149 Mass. 141; Farwell v. Meyers, 59 Mich. 179; Ewing v. Cook, 85 Tenn. 332; Carter v. Smith, 23 Wis.; Fowler v. Bank, 113 N. Y. 450; Hargadine McKittrick v. Warden, 151 Mo. 578; Ideal Concrete Machine Co. v. Bank, 145 N. Y. S. 119; Crook v. First Nat. Bank, 83 Wis. 31; Welch v. Carder, 95 Mo. App. 41. (9) The act of Gardner is not to be construed as the payment of a debt but the discharge of trust obligations which the evidence shows were imposed upon him. Harris Banking Co. v. Miller, 190 Mo. 640; Such trusts may be established by parol testimony; Bunel & Heffernan v. Nester, 203 Mo. 429; Tiernan's Executor v. Security B. & L. Assn., 152 Mo. 135; Clifford Banking Co. v. Donovan, 195 Mo. 262. (10) A person who takes payment from a debtor is not bound to inquire into the manner in which the debtor acquired the money to make the payment. Thomson v. Clydesdale Bank, 3 A. C. 282, 69 L. T. N. S. 156; 52 L. R. A. note p. 797; (11) The court's instructions for both parties fairly submitted the issues and its verdict should not be disturbed. Jones v. Thomas, 218 Mo. 508; Davis v. Forman, 229 Mo. 27; Forman v. Davis, 229 Mo. 52.

BECKER, J.—This is a suit by the receiver of the Continental Assurance Company of America to recover a payment of $1000. alleged to have been made to the

defendant from the funds of the company. The petition is in the regular form, for money had and received. The answer is a general denial, and second, further, that the plaintiff is estopped from prosecuting his action against this defendant by having, with full knowledge of all the facts and circumstances attendant upon the transaction referred to in the petition of plaintiff, instituted suit in the circuit court of the city of St. Louis for the recovery of the moneys referred to in the petition of plaintiff (together with other moneys) against one Harry B. Gardner, secretary of the Continental Assurance Company of America, and in said action having recovered judgment against said Gardner.

The case was tried before a judge and a jury and from a judgment in favor of the defendant, plaintiff in due course brings this appeal.

The record in this case is unsatisfactory and meager with respect to certain facts which, perhaps, while not absolutely essential to the case, should have been introduced for a comprehensive understanding thereof by the court and jury. Certain statements of facts are made as a basis for argument in the briefs as though such facts were duly established by the testimony in the record, when in point of fact the record before us is silent thereon.

As to the facts, one Harry B. Gardner, in the early part of the year 1909, interested Messrs. Gillespie, Douglas and Caneer in the organizing of the Continental Assurance Company of America, Gardner agreeing with them that upon their putting up a certain sum to be used for "preliminary expenses," "they were to have so much of the initial stock issued if they would interest themselves in this proposition and help finance it from the start." It appears that on the 24th of February, 1909, the said Douglas, Gillespie and Caneer, together with one Biggs, negotiated a loan at the Union Station Bank of St. Louis upon their joint promissory note, whereby they obtained the sum of $1500. This $1500 was turned over to said Gardner; whether or not Gardner at the time knew that the money had been borrowed

from the said bank in the manner above stated is in controversy. However, the money was paid to Gardner and was used for what has been termed "preliminary expenses incident to the organization of the proposed Continental Assurance Company of America," the money being spent for incorporation fees, charter, printing, paper and other incidentals. At the time the money was turned over to Gardner, which was prior to the time the company received its charter, Douglas, Caneer and Gillespie received some kind of a receipt showing that they were to have some sort of stock in the company in an amount not definitely shown by the record. When matters had proceeded to the point where the company was going to apply for its charter, they were advised by counsel that the subscriptions of said Gillespie, Douglas and Caneer were worthless and it would be necessary for them to "renew their subscriptions made under the first arrangement." This each of said parties refused to do with the exception of Caneer who did afterwards become a stockholder in the company. On June 17, 1909, said Gardner made a payment of $500 out of his own funds to the Union Station Bank, which sum was accepted and applied by the said bank as a payment to the extent thereof on the said $1500 note of Douglas, Biggs, Gillespie and Caneer.

The Continental Assurance Company of America received its certificate of incorporation from the Secretary of State; it was dated April 4, 1909. Subsequently the board of directors met and Gardner was authorized to act as fiscal agent to sell the company's stock and receive twenty-four per cent of stock sales. Gardner did proceed to sell the stock of the company which had a capital of $500,000 but never succeeded in selling all of the capital stock of the company and consequently the company at no time received the necessary license to do an insurance business.

It appears that the note held by the Union Station Bank which was originally for $1500, upon which there remained a balance due of $1000, was placed by the bank in the hands of John H. Boogher, its attorney,

for collection. Boogher went to the office of the Continental Assurance Company of America to make demand for payment of the balance due on said note from Caneer, one of the makers thereof; Caneer being at that time connected in some capacity with the said Continental Assurance Company. After some colloquy Caneer went into another office in the same suite and returned shortly and handed Boogher a check in the sum of $1000 dated July 7, 1909, made payable to the order of the Union Station Bank, drawn on the Third National Bank of St. Louis, upon the funds of the Continental Assurance Company of America, and signed Harry B. Gardner, Secretary. Boogher accepted this check and cashed it and paid the bank the proceeds thereof less his attorney's fee.

Boogher testified that there was some discussion at the time he received the check from Caneer as to what he should do with the note. Boogher, as attorney for the Union Station Bank, did deliver the note to Gardner with the following endorsement: "Pay Harry B. Gardner, without recourse on us, Union Station Bank, by John H. Boogher, counsel." Gardner in turn, after receiving the note, turned the note over to A. R. Russell with the endorsement: "Pay A. R. Russell without recourse, H. B. Gardner," and it appears Russell thereafter brought suit on the note against Caneer. It also appears that Gardner had "borrowed $300 of Mr. Femmer on that note."

With reference to how Gardner had come to issue the company's check for $1000 to pay off the said $1000 note, Gardner stated that the makers of the note would not renew their subscriptions for stock in the company, and, "they were threatening to put the company into the hands of a receiver, and I kept insisting that they renew their subscriptions made under the first arrangement, because their old subscriptions were worthless unless ratified under the new charter and I wanted to save the company, and they insisted that I give them their money back, and to avoid trouble I did refund it as I stated."

At the close of all the evidence in the case counsel for plaintiff requested a peremptory instruction that the jury, under the law and the evidence, return a verdict in favor of plaintiff and against the defendant in the sum of $1000, with interest at the rate of six per cent. per annum from the 18th day of May, 1912, which the court refused. The court submitted the case to jury after giving instructions, and the jury returned a verdict in favor of the defendant and judgment was entered in accordance therewith. Such of the instructions as are necessary will be found set out below in the opinion.

As to the assignment of error that the learned trial court committed error in overruling plaintiff's instruction requested at the close of all the testimony that under the law and the evidence plaintiff was entitled to recover, it is sufficient to say that an examination of this record fails to convince us that the case falls within the limits of the rule of law laid down in the case of Knisely v. Leathe, 178 S. W. (Mo.) 453, l. c. 460. [See, also, Stevens v. Barber Supply Co., 67 Mo. App. 587, l. c. 589-590; Murdock v. Ganahl, 47 Mo. l. c. 137; Bank v. Railroad, 172 Mo. App. 678, 155 S. W. 1111.]

We will next consider the earnest and elaborate argument made by learned counsel for respondent, namely, that plaintiff is estopped from prosecuting this action against the defendant by reason of the fact that this plaintiff, the receiver for the Continental Assurance Company of America had, prior to the bringing of this action and with full knowledge of all the facts and circumstances attendant upon the transaction on which this suit is based, instituted suit in the circuit court of the city of St. Louis for the recovery of moneys (the recovery of which is also the basis of this suit) together with other moneys, against said Gardner the secretary of the Continental Assurance Company of America, and in which action the plaintiff (also plaintiff herein) recovered judgment against said Gardner; one of the items going to make up said judgment being the identi-

cal moneys sought to be recovered from the defendant in this case.

The doctrine of election sought to be invoked by the respondent and seeking to bring the instant case within that line of cases which hold that the pursuit of one remedy precludes the pursuit of another, applies only to those cases in which the party has two remedies which are inconsistent with each other and has no application to a state of facts where a party may have the right to bring more than one suit. [Steinback v. Murphy, 143 Mo. App. 537, 128 S. W. 628.]

We are of the opinion that when Gardner signed the check for $1000 drawn upon the funds of the Continental Assurance Company of America, on deposit at the Third National Bank, and this check was accepted by the Union Station Bank and the bank in turn received the payment thereon and turned the note, payment for which the check was given, over to said Gardner, two causes of action arose in favor of the Continental Assurance Company of America. It could have sued Gardner for conversion; it could have sued the Union Station Bank as for money had and received. As to whether the company, not having at the time the check was given received a license to do business, had the power to elect to take a note such as was taken by Gardner from the bank in satisfaction of a claim for moneys wrongfully paid out of its funds by Gardner, and so could have sued Gardner in replevin and recovered possession of the note, as also the question as to whether the company would have had an action against the Third National Bank for the paying out of the money on the check of Gardner from the funds of the Continental Assurance Company at a time when said company had not received its license to do business, we need not discuss.

But we hold these remedies are not inconsistent, for the Continental Assurance Company filed suit against Gardner alleging that he, while acting as secretary and fiscal agent of the company, received certain moneys which belonged to the company; that

he failed to account to the company or the receiver for the full amount of the moneys so received belonging to the Continental Assurance Company and sued for the balance as being unlawfully retained by Gardner and converted to his own use. Such suit against Gardner cannot be viewed as an affirmance of Gardner's action in paying over the funds of the company to the bank for the payment or the purchase of the note; it is rather a clear disaffirmance of such action on his part, and, unless the company, after obtaining its judgment against Gardner in such a suit, which judgment included the particular item in question in this suit, had obtained satisfaction of the judgment, such company cannot be precluded from its right of action against the defendant herein, and if there had been a partial satisfaction of such judgment the company was still entitled to bring suit against this defendant and recover such balance of the judgment covering this particular item which remained unpaid. This question has been before the Supreme Court of the United States in the case of Milwaukee National Bank v. State Bank, 103 U. S. 668. The court there held, "that the party misappropriating the funds is liable to the plaintiff for such misappropriation and is entitled to credit for such sums as might be collected from those who received the funds or property misappropriated by the defendant." The trial court therefore properly instructed the jury that the prior action of plaintiff against Gardner was no bar to plaintiff's right to recover in this action against defendant.

Appellant assigns as error the giving of certain instructions by the court of its own motion. We set out the instructions, italicizing that portion of each criticized:

"You are still further instructed that if you find that said check was drawn by said Harry B. Gardner, as secretary only of said Continental Assurance Company, *and without further authority from the board of directors of said company,* then said Gardner had no right

to so use the funds of said company, and the company was not bound by his acts."

"You are further instructed that if you believe and find from the evidence in this case that after Caneer, Gillespie and Douglas had paid over to said Gardner the proceeds of said note, and before the organization of the company, they, or any of them, undertook to recede from their subscription to stock therein and demanded of Gardner the return of their money; and if you further find from the evidence that after the organization of the company, Caneer, Gillespie and Douglas, or any of them, still adhered to their determination to withdraw and to demand the return of their money, threatening to institute legal proceedings in case such demand was not recognized, and that thereupon and for the purpose of avoiding litigation, *the said Gardner, acting with the consent and authority of the board of directors of said company, drew said check and delivered, or caused the same to be delivered, to the defendant bank as a means of repaying to said Caneer, Gillespie and Douglas, or any of them, a part of the money which they had paid to said Gardner before the organization of the company,* then you should return a verdict for the defendant."

It must be remembered that the Continental Assurance Company of America was still in process of organization and had not obtained a license to do an insurance business. And during such period, as was said in the case of Reynolds, Receiver of The Continental Assurance Company v. Whittemore (Mo.), 190 S. W. 594, l. c. 596: "The preliminary corporation had no power to assume an indebtedness contracted by the promoters; and, had the money been afterwards used in connection with securing the subscriptions to the stock, the subscribers would be under no obligation to return it." Furthermore, "Prior to obtaining a license to do an insurance business such organization has no power or authority to do or transact any business of any kind or character whatsoever and all persons dealing with it are bound to take notice

of its limited powers." [Ellerbe v. Bank, 109 Mo. 445, 19 S. W. 241.] And as this court has in a late case, not yet reported, stated: "The rule of decision has long prevailed in this State to the effect that one accepting a check from a corporation drawn by an officer thereof in payment of his private obligation, takes the risk of being required to restore the proceeds thereof in an action as for money had and received, in the event that the corporate funds were thereby misapplied." [McCullam, Trustee in Bankruptcy of Masters Lumber Co. v. Buckingham Hotel Company,—S. W.—, and cases therein cited.] And this applies to the instant case. Douglas, Caneer, Gillespie and Biggs could have no claim for any moneys advanced by them to Gardner, even though such money was used for the payment of the preliminary expenses of such embryonic company, and therefore any check drawn upon the funds of such company prior to its obtaining a license to do business when such funds are a part or portion of the money that is to make up the capital stock of the company, must be held to be accepted with the knowledge of the fact that neither the company nor the officers have the necessary authority to make payments of this nature out of such funds. [Ellerbe v. Bank, supra; Taylor v. Insurance Co., 266 Mo. 283, 181 S. W. 8; Reynolds, Receiver v. Whittemore, supra.]

Coming then to the question of the criticised instructions, supra, we have carefully searched the record for any testimony to base the italicized portions of the above two instructions with reference to the consent of the board of directors on, and fail to find any. The only reference in the testimony to the board of directors in any way, shape or form, is a statement by Gardner that after the charter had been obtained for the company, and when no license for doing business had yet been obtained, "the board of directors met and I was authorized to act as fiscal agent to sell the company's stock and receive twenty-four per cent of stock sales." This statement in nowise can be viewed as warranting the criticised portions of said instructions,

and in view of the entire record with reference thereto, and what we have said concerning the law, and considering the result arrived at by the jury in the case, we hold that the giving of this instruction was prejudicial error.

Further, the court gave an instruction that the burden of proof in the case rested upon the plaintiff. The instruction is subject to criticism in that it is the established rule of decision in this State that a check such as was given by Gardner in the instant case to the Union Station Bank, defendant below, carries upon its face notice of its, "irregular and illegal character." [St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548, 136 S. W. 716.] And having accepted the check and obtained the money thereon, the burden is upon the defendant to show by evidence that Gardner was either beneficial owner of the fund or duly authorized to make such payment by those having authority to authorize such payment. [See Reynolds, Receiver, v. Whittemore, supra, also, St. Charles Sav. Bank v. Edwards, 243 Mo. 553, l. c. 569, 147 S. W. 978, and cases therein cited.] Upon a retrial the court should frame its instructions on the burden of proof in accordance with such rule.

The judgment is accordingly reversed and the cause remanded. *Reynolds, P. J.,* and *Allen, J.,* concur.